And may it please the court, I'm John Saba, appellant. Okay, now based on the ruling of this court, we filed, and when I say we, I mean appellants, you know, we filed an adversary complaint seeking to dissolve the partnership between Broadway Acacia and Flamingo 55 with injunctive relief and some other claims. The cause of action for dissolution was basically, look, there's a partnership here, something happened, it is dissolved, let's do an accounting of the partnership itself. And of course, we also did a cause of action for injunctive relief to stop any distribution of funds, and in particular, to recover some funds from the trustee who have paid himself $750,000. And most of that money was to attack us, was to attack us. And $750,000, if you do the calculation, it comes to 42% of the estate, that's how much he charged. And this case is very simple. You know, it has two creditors, and the estate had one property, and it's been going on for 12 years, and the only people who made any benefit are the trustee and the lawyers. They paid themselves three quarters of a million dollars. Flamingo 55 was not insolvent when the land was sold. It was not insolvent, but now it is insolvent. Out of $1,750,000, there's remaining now in the estate, 738,000, a million, some money was paid to some creditors, but out of $1,750,000, there's only 738,000. I don't know what kind of administration this is, but it seems to be a little excessive to me. Again, you know, the court ruling. We had this court make a ruling that there's a partnership. Well, partnership in the development of, but also made a ruling that this asset was an asset of the debtor, Flamingo. Correct, so it's a partnership for the acquisition and development of the property. Am I misreading you, Your Honor? I'm sure you're real aware of the record. You're not misreading me. The bankruptcy court came back very clearly and said he didn't say you were partners in ownership of the asset, right? That there had been an earlier ruling that it was an asset of the bankruptcy estate. But not only that, Your Honor. When the bankruptcy court made its first ruling, it said we're partners, and now in the speech, I was present at that hearing, said no, no, no, no. Broadway Acacia was not a partner with Flamingo 55. It was partner with some other entities, but not Flamingo 55. That's what the court said. And whichever way you analyze it, it is contradictory. It's basically dismissing this court's ruling. It's ignoring it. This court said that there was partnership. It's saying, well, in its original subrogation, it said there was partnership. If you read the subrogation, I'm sure you have, the bankruptcy court's subrogational opinion in two or three places says, yes, there's a partnership between Broadway Acacia and the Flamingo 55, and it is for the venture. This court agrees with it, affirms it, clarifies it, and affirms it, and then when we do the adversary complaint, the bankruptcy court goes back and says, oh, no, no, you are not partners with Flamingo. Broadway Acacia was not partners with Flamingo 55. It was with some other entities, and they did not own the land. And the question is, if there was a partnership between Broadway Acacia and some other entities, and there was no land, what's the purpose of that partnership? What business did they have? It seems strange. But there were multiple references, Your Honor, in the bankruptcy court's ruling on the subrogation that there was a partnership. And then we cannot reconcile the new bankruptcy court statements with what this court had ruled. Whichever way, if the bankruptcy court said that there was no partnership, then our subrogation claim was good to begin with. And if we had partnership with somebody else, well, then our subrogation claim was good to begin with. And the same thing is if it says that we did not own the land, and so on. But the bottom line is we did pay a million dollars. We did pay nearly a million dollars appellants. And... The reason for the court dismissing our adversarial complaint it was basically just going over, who had title to the land? Who had title to the land? But the land was already sold. And it doesn't really matter. You know, what matters is that we should have an accounting of the partnership and see where the money is going, who deserves it, and so on and so forth. So, well, this is against equity. You know, it is not right that somebody, a partner takes all the money from the sale of the property and uses it to pay himself to attack the other partner. When, if you look at it, I mean, I apologize. The trustee had no authority to do any work for Broadway Acacia or for the partnership. He only had authority to do work for Flamingo 55, which was the debtor. And yet, you know, he's spending all this money attacking using the funds that could ultimately belong to the partnership or to the partners, using it to attack the partners. And the partnership might have, in and of itself, the partnership might have claims against Flamingo 55. You know, abuse of fiduciary duty for using the money to attack the other partner's claim. Aside from everything else, there is a partnership right here to, against, you know, what is going on. Thank you so much. Thank you, counsel. May it please the court, Dwayne Gilman appearing on behalf of Timothy S. Corey, the trustee, and on behalf of Durham, Jones, and Pinderger, my law firm, who was named in the complaint and who obtained the dismissal initially at the bankruptcy court level. There are three points that I want to emphasize within the 15 minutes I've been allocated. And thank you for the time. It is a joy to appear in front of such crystal minds. I'm a little in awe of you, sir, having seen everything you've done with various cases. It was a little intimidating. And I was appearing in front of you approximately six weeks ago, maybe a little longer. A little longer than that. Maybe it was, coming to San Francisco is such a joy. I guess we should have shrunk your time so that you didn't have all the time for the splatter, I guess. Can I, you convinced- Particularly if you're only going to compliment two out of the three of us. So you might want to move on with your argument now. And anyway, you've convinced me now that I have to rule against you because of your poor taste. How you managed to be appointed to the- Too late, too late. Just go on with the argument. Just go on with the argument, counsel. Your honor, there's three points. First, the district court did not err in sustaining the bankruptcy court dismissal of the case under the doctrines of law of the case, collateral estoppel, and res judicata. Second, the subrogation opinion of this court makes no finding as they allege it makes findings. And it properly sustains the ruling that there was a partnership to develop, but no ruling by Judge Markell that the partnership owned property. The third- But why does it matter who actually owned the property? Well- If they're in fact, I mean, I have to say I am, I do find compelling Mr. Saba's equity argument because this strikes me as outrageously unfair that you had a partnership between two entities. Who cares who owned the land, right? That partner got all the money from the sale of the land and the other partner paid off basically the only debt or the main debt that the partnership had. So- The reason we ended up with all of the money is because we sued Mr. Saba, Mr. Grantham and their fan amenities and brought it back into the estate under the fraudulent conveyance after they had drug it out of the partnerships pre-petition. Their manipulation and their fraudulent activities in violation of 548, 544 and state fraudulent conveyance laws which were what triggered initially the involuntary petition, the appointment of a trustee, the consolidation of the two cases and us going after them to drag back into the estate out of their pocket on the eve I was gonna conduct depositions of both of them, the property. They didn't wanna be deposed. They didn't wanna discuss these facts in back of it. They'd rather sign a deed and give us a deed. And I got it signed on the eve of taking Mr. Saba's and Mr. Grantham's deposition, literally. Those, because it was brought into the estate as a fraudulent conveyance, 541 says by statute that it is property of the estate. That's how we got the property. That's how title was vested in the trustee, in the estate, in the hands of the trustee for the benefit of creditors. It doesn't leave it in some phantom partnership if it ever was in that partnership after the maneuvering that had been taking place between various entities related to senior care. Pardon me, Your Honor. I need a drink. At the bar. Well, let me, while you're taking a drink, then ask, that's all, I understand all that. And that, to me, is why it doesn't matter who had titled the property. The fact is that this partnership that was formed was to develop a particular piece of property and it had basically one asset. That asset was sold. One partner got, in effect, all the money from the sale of that property. And the other partner paid off all of the debt that the partnership owed. And so I just don't see, how is that fair? That at least the other partner that got all the money, why don't they at least have to contribute to pay down half the debt? Your Honor, there is an ancient order of, it wasn't even Judge Markell. It was Judge Riegel, which allowed relief from the stay to for Datacom to foreclose the California property. And not foreclose the Las Vegas property. Just figuring about who was entitled to what. That was not appealed. It was, I don't know, we were not even appointed at the time that order was entered. In fact. Interesting, because they sought to foreclose on the Nevada property and they ordered to go forward in the Laguna Beach property, right? That's correct. Why? I don't know. I don't need to write. It was not in the case. A trustee was not appointed. I think at the time, the control over the debtor was in the hands of Mr. Grantham and Mr. Saba. They had already gotten the property out the back door via the fraudulent conveyances in Nevada. And for whatever reason, Judge Riegel decided to allow Datacom to go against the other property, let the estate take care of the Nevada properties, let it go forward, get a trustee appointed, have the trustee pursue the fraudulent conveyance case, and bring it back in, then it was sold, then it was distributed. Then they would have had a claim, possibly, if they hadn't have made their election of going for subrogation. When you get greedy in the bankruptcy court, you get hurt sometimes. Having chosen to go for subrogation, and I'm back into the other argument, but I wanna go through the facts in some detail because they're very important to understand why the law of the case and why the collateral estoppel and judicial estoppel, and to a certain extent, a favorite of mine because of it's being applied in bankruptcy more and more, judicial estoppel, a commend opinion you were involved in, are all made out in this case. On May 11th, 2004, the two entities, one of which had been an involuntary seven, Flamingo, and one had been a voluntary 11, Vegas townhouse partners were substantively consolidated, and Mr. Crowe was appointed. He then went about pursuing the conveyed property, the Nevada property, which were in the hands of entities controlled by Mr. Grantham and Mr. Kasaba. On the eve of their deposition, a settlement was reached. The settlement said this property comes into the hands of the trustee, into the bankruptcy estate, and then interestingly enough, after having signed the settlement, Mr. Grantham and Mr. Kasaba objected to it. That objection was adjudicated and overruled, and it was adjudicated to come into the estate as property of the estate under that original settlement. Next, Mr. Kasaba filed four separate adversary proceedings, or Mr. Grantham, the two of them, asserting alter ego on their judgment claim they'd inherited through their litigation in California, asserting alter ego, well, various adversaries, and then the two major proofs of claims which were addressed in the previous appeal. In each of those, the adversaries were dismissed, final orders were entered with a finding that the property was property of the estate. Then there are two different sale orders. Mr. Grantham and Mr. Kasaba opposed those sales. Again, it's adjudicated, and the court says it is property of the estate, they have to say that. We can't sell under three, I say we. I've been a trustee for 35 years, Mr. Corey was trustee for 20 years, and I think in terms of a trustee, so I have to admit that preference. But we understand this chronology clearly. Are you relying on, you were talking a minute ago about law of the case, judicial estoppel, where are you? All three, I frankly think the best is law of the case because the case says this was sold under 363, he had to make the finding it was property of the estate, that order was appealed, ultimately the appeal was abandoned and it's property of the estate. Law of the case is the best of the three, or four, really, that apply. I'm still, I'm just not, it's not registering with me at all why that matters. It's just one partner got all the money, the other partner paid all the debt, and the partner on the short end of the stick is saying there needs to be an accounting. That just strikes me as a simple case of equitable, it's just, who cares whose name the property was in? We just need to focus on who got all the money. What it matters is what law governs, and it's really a preemption issue. If it's property of the estate, then it's governance is bankruptcy law, period. And Congress says this is how it's gonna be distributed in Chapter Seven, and they're very rigid about the priorities. I mean, why the fisherman lobby and the farmer lobby got a priority, I don't know. Why the single parents got a good deal from now Senator Warren's lobbying, I do know, because I know her and I know what an effort she went through to get that priority in. But Congress is very rigid about how property of a bankruptcy estate is gonna be distributed, and it set out very rigidly, particularly in Chapter Seven. And it doesn't let state partnership law intrude upon that distribution. Now, Mr. Saba complained about the fees I've been paid, and I have been paid, and we have worked hard in this case. He objected to every single fee act, and he didn't appeal those, and that's not in front of this court. The system of governance is the federal system, the federal bankruptcy system. And yes, before any money is paid to attorneys or any money is paid to trustees, they must prove at a hearing the reasonableness of those fees and the appropriateness of paying it. And we were opposed on every one of those applications. And we made it, we played by those rules. This complaint tries to change the rules away from federal rules. And I say federal rules govern. It's like you got a lawsuit, sir, you know more about securities laws than I ever will or ever hope to. You got a lawsuit under the securities laws of the United States, and someone says, oh no, that doesn't matter, partnership law matters. You're going to drag them back to the securities laws because of preemption. Is that an answer to your question, Your Honor? I think your point is just that, going back to the other appeal, that basically they had a claim here. They probably pursued the wrong theory, because you say that they got greedy, and they're just now out of luck. I mean, that's what I hear you saying, that there was a righteous claim that it existed at the outset on the equity theory that I posited, and that they picked the wrong road to go down, and now it's just too late. That's what I hear you saying. That's fine, if that's your position, I just want to know. Your Honor, they made a tactical decision that cost them. I think it would have been very different if they'd have stayed with claim nine, their contribution claim, saying, hey, we paid all this debt off, treat us like any other creditor, because we had to pay that off. They didn't choose to do that. They went for the golden apple, the subrogation big bite of a secured claim, in order to get interest, in order to get their attorney fees, in order to get all the other things that a secured creditor gets, and they lost, because of the choice I think Congress made, and we're back to argument one. Does the court, Your Honor, have I answered your question? I think I understand your question. Your Honor, do I have, I don't mean to neglect you, ma'am, at all. Do you have any questions? I'm sure you don't, and I don't feel neglected. Okay. For the three reasons, one, and maybe most importantly, the language you quoted from Judge Markell, where he said, what I did not say was, there was a partnership that owned the land, rather that there was a partnership involved in the acquisition of the land. That covers it. He made no finding that the owner of the land was the partnership, and since it got into the estate via the fraudulent conveyance route, Congress says it's property of the estate, therefore the entire distribution system of its proceeds is federal, is the bankruptcy code, not partnership law. Thank you, Counsel. Thank you, Your Honor. Thank you. Just a couple of points, Your Honors. Counsel talked about the fraudulent transfer of appellants of the land. You know, it was settled through a stipulation, and approved by the court, and the trustee released all claims against appellants, as far as the adversary complaint that he brought. We never released anything, we never abandoned anything. And yet, and then he says, well, they objected to it. We objected because he kept saying, these appellants are fraudulently transferred, and we said, we reached an agreement here, and there is no shred of evidence of anything fraudulent, and you released all claims. Why do you keep repeating it? And the judge said, well, I cannot stop them from saying things. If it does happen in the future, you know, I will do something about it. But the objection was basically because he kept repeating, and accusing us of fraudulently transferring the property, or whatever, after the agreement had been signed. And we were incensed by that. And it was, if I may say, it was one incident among many, of slurs being thrown at us. You know, we were, even though we're lawyers, we were really passive partners, in the scheme. You know, we did all the legal work, brought the property, we paid 60% of the costs, and we only obtained 40%. We really knew, we were kept in the dark. We were busy with our work, we were kept in the dark. So when I discovered, when I went to the county recorder's office, and I found that the land, the building in Laguna Beach was encumbered, we were upset, we were very upset. But we did not know what happened, what to do, what our stance is. And we fought hard, we fought hard, and it was equimonious and vigorous. And we won a judgment. And there were probably around, I would say maybe 15 other lawsuits that followed, trying to enforce that judgment that we received. So when we go to bank, okay, this bankruptcy case comes up, we don't know where we are, we don't know where we stand. So we are trying, you know, do we have, I don't remember everything about, you know, what the court gave us in the judgment. Was it, do we own this land? Do we own the partnership? Do we own, we don't know. I mean, we, so we applied to the court, tell us, give us guidance. And the court does not give us any guidance. It does not. And, you know, it is irrelevant as to who owns the land. In a partnership, a partner does not have any claim against the land. He has a claim against the other partner. So, to go back and say, okay, you know the, I do not believe that there is any law that says that I can grab the land. Okay, now the land is in the estate, and you guys, you go ahead and pay the debts on it. That's not the way it works. You know, with inequity, with the benefit, always goes the burden. Nobody can say, you know, I own the land and you own the debt. Goodbye. It's sin. It's just absurd. Thank you, Your Honor. Thank you. We're gonna stand in recess for just about 10 minutes.
judges: Rakoff, Christen, Watford